IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| BOARD OF TRUSTEES OF THE GREATER PENNSYLVANIA CARPENTERS' MEDICAL PLAN,<br><br>Plaintiff,<br><br>vs.<br><br>QCC INSURANCE COMPANY, THE UNION LABOR LIFE INSURANCE COMPANY,<br><br>Defendants, | 2:24-CV-01047-MJH |

OPINION AND ORDER

Plaintiff, Board of Trustees of the Greater Pennsylvania Carpenters' Medical Plan (the "Plan"), brings the within action against Defendants, QCC Insurance Company and Union Labor Life Insurance Company (ULLICO). (ECF No. 20). Against ULLICO, the Plan asserts a claim for equitable relief pursuant to § 502 (a)(3) of the Employee Retirement Income Security Act (ERISA) (Count II) and Breach of Contract (Count IV). *Id*. ULLICO moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 33). The matter is now ripe for decision.

Upon consideration of the Amended Complaint (ECF No. 20), ULLICO's Motion to Dismiss (ECF No. 33), the respective responses and briefs (ECF Nos. 34, 38, 39, 42, and 45), and for the following reasons, ULLICO's Motion to Dismiss will be granted.

I. Background

The Plan pays medical expenses and related benefits, including prescription drug expenses for eligible participants and dependents. (ECF No. 20 at ¶ 6). In providing said benefits, the Plan maintains agreements with third-parties. *Id*. at ¶ 7. QCC serves as the Plan's

third-party carrier and administrator. ULLICO provides Stop Loss insurance to Plaintiff. *Id*. at ¶ 14.

The dispute arises from the medical coverage for a former Plan member, Carl Young. Mr. Young's medical coverage ended on December 31, 2021 due to non-payment. *Id*. at ¶ 19. Mr. Young entered the hospital on December 23, 2021, when he was still covered by the Plan. *Id*. at ¶¶ 23, 26. During the time period of December 23, 2021 to December 31, 2021, Mr. Young's medical bills totaled $242,588.34, which the Plan covered. *Id*. at ¶ 28. Mr. Young stayed in the hospital, receiving care, until April 7, 2022. *Id*. at ¶ 30. The Plan alleges that Mr. Young was not covered by the Plan during the time period of January 1, 2022 to April 7, 2022. *Id*.

From January 1, 2022 to April 7, 2022, Mr. Young's medical bills totaled $2,587,608.94. *Id*. at ¶ 31. This amount was paid in full by QCC and subsequently charged to the Plan. *Id*. In November 2022, the Plan was notified by Defendant ULLICO about the large medical claim paid on behalf of Carl Young. *Id*. at ¶ 33. On December 1, 2022, QCC advised the Plan Mr. Young's claim would not qualify for Stop Loss coverage due to policy dates as well as the fact that Mr. Young's coverage terminated as of January 1, 2022. *Id*. at ¶ 34. On February 1, 2024, ULLICO notified the Plan Plaintiff was notified by Defendant ULLICO that reimbursement was denied because "the dates of services incurred after claimants' termination date." *Id*. at ¶ 35. To date, the Plan alleges that it has not been reimbursed by any party for the amounts it paid on behalf of Mr. Young. *Id*. at ¶ 37.

II.   Relevant Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

2

complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief [*5] above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs. Ltd.*, 2008 U.S. Dist. LEXIS 44192, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether

the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III. Discussion

A. ERISA Claim (Count II)

ULLICO argues that the Plan's ERISA claim fails because ULLICO is not a plan fiduciary, and the Plan seeks legal relief which is not cognizable under ERISA. The Plan contends that ERISA § 502(a)(3) does not preclude a fiduciary from proceeding on a claim against a non-fiduciary, and equitable relief to enforce the terms of the ULLICO policy is appropriate under ERISA.

1. Fiduciary

ERISA Section 502(a) provides for civil enforcement. 29 U.S.C. § 1132(a). Section 502(a) identifies the causes of action and plaintiffs authorized to bring such actions under the

statute. *Id.* Section 502(a)(1) authorizes plan participants and beneficiaries to bring suit to recover benefits and enforce their rights due under the terms of a plan. *Id.* § 1132(a)(1). Section 502(a)(2) authorizes the Secretary of Labor, plan participants, beneficiaries, and fiduciaries to bring suit for breach of fiduciary duties. *Id.* § 1132(b)(2). Finally, Section 502(a)(3), as the Supreme Court has explained, acts as a "catchall" provision or "safety net, offering appropriate equitable relief for injuries caused by violations that [Section] 502 does not elsewhere adequately remedy." *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996). Section 502(a)(3) authorizes a suit:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). In *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), the Supreme Court held that while Section 502(a)(3) describes "the universe of plaintiffs who may bring certain civil actions," it "admits of no limit ... on the universe of possible defendants" subject to Section 502(a)(3) liability. *Id.* at 246-47 (emphasis in original). Rather, the focus of Section 502(a)(3) "is on redressing the 'act or practice which violates any provision of [ERISA Title I]'" or the terms of the plan. *Id.*

Here, given the plain statutory language and the Supreme Court's interpretation of the same in *Harris Trust*, the Plan was not required to allege that ULLICO is a fiduciary under ERISA to plead a claim under Section 502(a)(3). Therefore, ULLICO's arguments relative to its fiduciary or non-fiduciary status would not independently foreclose the Plan's Section 502(a)(3) claim.

2. Equitable Relief under ERISA

Fiduciary status aside, ULLICO argues that ERISA only authorizes "appropriate equitable relief," not pure monetary damages.

5

The Plan contends that it would be equitable for the Court to order specific performance of the Stop Loss policy. Specific performance of a contract is an equitable remedy and would ultimately require ULLICO to fulfill its obligations. However, the Plan acknowledges that the breach of contract claim asserted against ULLICO constitutes the central and foundational basis of the claims set forth in the Amended Complaint. In recognition of this, Plaintiff further acknowledges that the Court need not rule on the 502(a)(3) claim, given the availability of adequate contractual remedies to address the alleged wrongs

Under § 502(a)(3) of the ERISA, only equitable relief, not legal relief, can be granted in a civil suit seeking enforcement of the terms of the plan. *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016). "A claim for money due and owing under a contract is 'quintessentially an action at law.'" *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted).

Here, given the Plan's concessions in its responses to ULLICO's Motion to Dismiss, that the basis of its claim against ULLICO is contractual and not equitable in nature, ERISA Section 502(a)(3) is not the appropriate vehicle against this defendant.  While the Plan casts its claim as specific performance, the Amended Complaint clearly seeks reimbursement under the Plan's contractual terms with ULLICO.  Such an action is legal in nature and would not require to the Court to exercise any equitable powers.  Therefore, the Plan cannot maintain an action for equitable relief under ERISA § 502(a)(3).

Accordingly, ULLICO's Motion to Dismiss, as regards Count II, will be granted.  Count II against ULLICO will be dismissed.

B.  Breach of Contract Claim (Count IV)

Next, ULLICO argues that the Plan's breach of contract claim should be dismissed because the Amended Complaint does not sufficiently aver that, the losses tied to Mr. Young's post-termination medical care, were covered under the Stop Loss policy.  Thus, ULLICO maintains that, because the Plan has not met its threshold burden to allege a covered loss, it has not plausibly claimed that ULLICO breached the Policy by denying reimbursement for Mr. Young's medical hospitalization between January 1, 2022 and April 7, 2022.

The Plan contends that the Amended Complaint sufficiently identifies ULLICO's Stop Loss policy terms and that Mr. Young was covered under the terms of the Stop Loss policy. Specifically, the Plan argues that a Diagnosis-Related Group (DRG) algorithm triggered while Mr. Young was still covered, which would have transformed charges after his termination into reimbursable expenses. Further, the Plan contends the Stop Loss policy included a 'run in' period which would have covered post-termination claims from March 1, 2021 to February 28, 2023. Finally, the Plan maintains that its dispute with QCC and ULLICO, regarding the timing and nature of "incurred" expenses under insurance policies, is not suitable for resolution on a motion to dismiss.

In response, ULLICO maintains that the Amended Complaint contains no factual allegation that any DRG trigger occurred before Mr. Young's eligibility ended.  ULLICO further argues, that even if such were alleged, the DRG framework has no bearing on when an expense is "incurred" under the Stop Loss policy.  ULLICO also asserts that any run-in provision does not supersede participant eligibility requirements.

To state a viable breach-of-contract claim, a plaintiff must first allege facts establishing that the loss falls within the affirmative grant of coverage. *See, e.g., State Farm Fire & Cas. Co.*

*v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009); "Where the language of an insurance policy is clear and unambiguous, it must be given its plain and ordinary meaning." *12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1165 (3d Cir. 1996) (applying Pennsylvania law).

Here, the Plan seeks reimbursement from Mr. Young's hospitalization when he was not a "Covered Person" under the "Benefit Plan" as defined under the Stop Loss policy. The Stop Loss policy provides in pertinent part as follows.

> Benefit Period means the period specified in the Application/Schedule of Stop Loss for Specific and/or Aggregate Stop Loss Insurance during which an expense must be Incurred by a Plan Participant and be Paid by the Plan Sponsor for it to be considered an Eligible Expense under this Policy.
>
> Benefit Plan means the program of self-funded health care benefits provided to Plan Participants by the Plan Sponsor which:
>
> 1. is written in the Plan Document that is in effect on the effective date of this Policy, or as amended and so accepted by Us;
>
> 2. complies with all applicable Federal laws and regulations; and
>
> 3. meets the minimum requirements of the State in which this Policy is issued, if applicable.
>
> \*\*\*
>
> Covered Person / Person means an employee or member of the Plan Sponsor or any other individual who is eligible for benefits other than as a dependent under the Benefit Plan.
>
> \*\*\*
>
> Eligible Expenses means only the charges which:
>
> 1. are covered and payable under the Benefit Plan, as shown on the Application/Schedule of Stop Loss;
>
> 2. have been Paid by the Plan Sponsor in accordance with the terms of the Benefit Plan for the Benefit Period shown on the Application/Schedule of Stop Loss; and
>
> 3. are not excluded or limited under this Policy.
>
> \*\*\*

<u>Incurred</u> means the date on which:

1. a covered service was rendered to or supply was received by a Plan Participant; or

2. a periodic disability income benefit payment becomes payable to the Plan Participant (not the date disability commences) under the Benefit Plan.

(ECF No. 34-4 at pp. 10, 11 and 13).

Under these definitions, the Stop Loss policy confines coverage to expenses that are "covered and payable" under the Benefit Plan. The Amended Complaint concedes that Mr. Young's eligibility as a Covered Person under the Benefit Plan terminated on December 31, 2021, and that he was not covered by the Plan during the time period of January 1, 2022 to April 7, 2022. (EFC No. 20 at ¶¶ 25, 27, and 30)). Thus, following Mr. Young's coverage termination on January 1, 2022, any costs associated with his medical care were no longer payable under the Benefit Plan because they all "incurred" after Mr. Young's termination date, when he no longer fit the definition of a Covered Person. Therefore, because Mr. Young's medical bills between January 1, 2022 to April 7, 2022 pertain to an ineligible individual, said medical bills fall outside the Stop Loss policy's coverage.

As regards the Plan's DRG argument, the same is unavailing. The DRG framework reflects how QCC, not ULLICO, internally groups and prices medical services for reimbursement purposes. But how QCC calculates payments has no bearing on when an expense is "incurred" under the Stop Loss policy. ULLICO's Stop Loss policy contains no reference to DRG pricing, bundled payments, or any other event that would change the definition of "incurred."

Finally, as regards the Plan's "run-in" clause argument, the same is also unavailing. A run-in provision permits the Plan to submit claims incurred during the twelve months *preceding*

the Stop Loss policy's effective date on the condition that those claims meet the policy's core requirements, including participant eligibility, the definition of "Incurred," and applicable exclusions. Therefore, the run-in clause does not supersede those requirements. Under a similar provision, the Sixth Circuit confirmed that a run-in clause does not transform otherwise ineligible expenses into covered losses. *Clarcor, Inc. v. Madison Nat'l Life Ins. Co.*, 476 F. App'x 618, 625–26 (6th Cir. 2012) (run-in clause could not revive expenses incurred after employee's plan eligibility terminated).

Therefore, based upon the plain language of the Stop Loss policy language, the Amended Complaint does not plead a plausible breach of contract claim under that policy. The Plan has pleaded service dates outside the Stop Loss policy coverage period as applied to Mr. Young's medical claims between January 1, 2022 and April 7, 2022. Thus, ULLICO would not owe the Plan for these service dates.

Accordingly, ULLICO's Motion to Dismiss the Plan's Breach of Contract claim will be granted. Because the language of the Stop Loss policy and the Amended Complaint unambiguously establish that ULLICO would not owe the Plan reimbursement, any amendment is deemed futile.

IV.    Conclusion and Order

Based upon the foregoing, ULLICO's Motion to Dismiss is granted. Any amendment is deemed futile, and ULLICO is dismissed. A separate scheduling order will follow.

DATED this 17th day of February, 2026.

BY THE COURT:

_[signature: Marilyn J. Horan]_
MARILYN J. HORAN
United States District Judge